IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01323-RM-CBS

DOUGLAS E. BRUCE,

   Plaintiff,

v.

PACIFIC SPECIALTY INSURANCE CO.,

   Defendant.

_____

## RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Magistrate Judge Craig B. Shaffer

  This action involves claims for breach of contract, common law bad faith breach of

contract, as well as a statutory claim for bad faith delay or denial of insurance benefits pursuant

to Colorado Revised Statutes ("C.R.S.") §§ 10-3-1115 and 10-3-1116.  The claims arise out of a

July 7, 2014 fire which damaged Plaintiff Douglas E. Bruce's rental property in Colorado

Springs, Colorado.

  Pending before the court is Defendant Pacific Specialty Insurance Company's ("Pacific")

Motion for Summary Judgment (Doc. 20) filed on February 29, 2016.  Plaintiff filed his

Response to Defendant's Motion for Summary Judgment (Doc. 23) on March 10, 2016, which

was followed by Defendant's Reply in Support of Motion for Summary Judgment (Doc. 24) on

March 21, 2016.  Judge Raymond Moore referred the motion to the undersigned for a

recommendation pursuant to 28 U.S.C. § 636 and D.C.COLO.LCivR 72.2.  I have carefully

considered the parties' briefs and related exhibits, the entire case file and the applicable case law,

and concluded that oral argument would not assist the court in deciding the instant motion.  For the following reasons, the court recommends granting in part and denying in part Pacific's motion for summary judgment.

The court has subject matter jurisdiction under 28 U.S.C. § 1332, diversity jurisdiction. Pacific removed this case from state court alleging that Plaintiff is a citizen of Colorado, and Pacific is a California corporation with its principal place of business in Menlo Park, California. Doc. 1 (Notice of Removal) at 2.  Pacific asserts that Plaintiff's bad faith claims bring the amount in controversy above the minimum $75,000 required by 28 U.S.C. § 1332(a).  *Id.* at 3.

## I.    Undisputed Facts

For purposes of the pending motion only, the following facts appear to be undisputed.

Plaintiff owns a rental property at 633 East Boulder Street in Colorado Springs (the "Property").  As pertinent here, the Property includes a house separated into three rental units, referred to as Apartments A, B, and C, and a fence.  The house was built in 1905.

Plaintiff purchased insurance policy number ENY 0407553-00 from Pacific effective April 9, 2014 to April 9, 2015, for the Property.  Defendant filed a copy of the Policy, or an excerpt thereof.  Doc. 20-2 (entitled "Basic Dwelling Fire Policy").  Plaintiff purchased the Policy through a "producer," identified in the Policy as "TAG/Freedom Ins, Freedom Insurance-Springs, Inc." in Colorado Springs (Doc. 20-2 at p. 1 of 19) and identified in Plaintiff's deposition as Kevin Brumfiel.  Doc. 20-3 (Plaintiff's Deposition) at 35.  Defendant refers to the policy as a Colorado DP-1 homeowner policy.  It provides coverage for among other things, the dwelling (Coverage A), other structures such as fences (Coverage B), and fair rental value (Coverage D).  Doc. 20-2 at pp. 5-6 of 19.  The Policy has a $2500 deductible.  *Id.* at p. 2 of 19.

As to property losses, the Policy insures for "sudden and accidental direct physical loss to the property covered caused by … fire."  Doc. 20-2 at p. 7 of 19.  "Covered property losses are

settled at cash value at the time of loss but not more than the amount required to repair or replace the damaged property." *Id.* at p. 8 of 19. That is, the actual cash value of the property is the measure of damages unless it exceeds the cost of repair. "'Actual Cash Value' means replacement cost, less depreciation assessed at the time of loss." *Id.* at p. 5 of 19.

On July 7, 2014, a fire occurred at the Property that made Units A and B uninhabitable. The Policy instructs the insured "for policy service please contact your producer." Doc. 20-2 at p. 4 of 19. Plaintiff asserts that he reported his claim to the producer that same day. Doc. 7 (Complaint) at 1; Doc. 23 (Plaintiff's Opposition) at 3. Defendant does not dispute that date.

Pacific hired U.S. Adjusting Service to estimate the value of the damage as calculated according to the policy provisions. Doc. 20-1, 24-1 (Pacific's Statement of Fact and Reply Statement of Fact, "SOF") ¶ 8. The adjuster (Dan Pszanka) estimated the replacement cost of the fire damage to the house to be $42,502.99. Doc. 24-1 SOF ¶ 8 (citing Complaint at p. 1, third paragraph); Doc. 24-4 (Pacific's report to Plaintiff of estimates) at p. 15 of 24.[1] Pacific adopted Mr. Pszanka's estimate of the replacement cost for the loss to the house ($42,502.99) and subtracted the policy deductible of $2500. Doc. 24-1 SOF ¶ 9; Doc. 24-4 at p.15 of 24. To arrive at actual cash value on the loss to the house, Pacific then subtracted depreciation of $11,455.36. *Id.* The parties dispute the depreciation on the house, which will be discussed below. As its actual cash value calculation, Pacific paid Plaintiff $28,547.63 under Coverage A (Dwelling) by check dated August 28, 2014. Doc. 20-4.

At the same time Pacific paid under Coverage A on the loss to the house, it also issued checks to Plaintiff under Coverage B for damage to the fence and under Coverage D for lost

---

[1] Plaintiff disputes that Mr. Pszanka was "independent," but he does not dispute that Pacific used Mr. Pszanka's estimate of replacement cost or the accuracy of that estimate. Doc. 7 at 1 (alleges Pacific used adjustor's estimate); Doc. 23 at 9 (response to SOF ¶¶ 8, 9).

rents.  Doc. 20-1 SOF ¶ 9; Doc. 20-4 (copies of check stubs).  The fence payment is not at issue.

The lost rents payment will be discussed further below.

After receiving the checks, Plaintiff had the property repaired.[2]  Doc. 23 at 9, response to

SOF ¶ 14.  He did not keep track of his repair expenses.  *Id.*; Doc. 20-3 (Deposition) at 97-100.

By letter or email dated December 15, 2014, Plaintiff disputed the depreciation rate on

the house, the lost rents not paid for the full time period the rental units were uninhabitable, a

10% deduction of rent that the Unit A tenant had requested for November 26, 2014 to December

20, 2014 due to part of the space not being inhabitable, and hotel expenses that he had paid to

provide alternative living space to the tenants while their apartments were being repaired.  Doc. 7

Complaint at pp. 4-5.  He demanded respectively, payment within one week of the amount

withheld as depreciation on the house ($11,455.36); $1,942.85 for remaining rents lost before

reoccupation; $100.08 in a rent reduction after reoccupation; and $11,770 for the tenants' hotel

expenses.  *Id.* at p. 5.  He noted that 51 days, the time that Pacific took to make partial payment

of the claim, would be "unacceptable delay" if repeated.  *Id.*

In a May 11, 2015 letter or email to Pacific (*Id.* at 6), Plaintiff asserts that Pacific denied

by telephone and later in writing the amounts he had requested in December 2014.  Those

communications are not otherwise in the record.  In the same email, Plaintiff added a claim for

lost rents after the tenants reoccupied, failed to pay rent going forward, and moved out early.

Doc. 7 at pp. 6-7.  On May 19, 2015, Plaintiff filed his complaint in the El Paso County District

Court.  Doc. 7 at 1.  The Complaint asserts the amount of lost rents after reoccupation is

$10,277.49 and that Pacific ignored his May 11, 2015 communication.  *Id.* at 2.

---

[2] Plaintiff alleges that Pacific's letter said the checks were for "undisputed amounts."  Complaint
Ex. 1.  Pacific's motion does not raise any arguments about this allegation.

## II.      Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c)(2). *See also Devery Implement Co. v. J.I. Case Co.,* 944 F.2d 724, 726 (10th Cir. 1991). To meet the burden of persuasion required to support summary judgment, the movant must "point to those portions of the record that demonstrate an absence of a genuine issue of material fact, given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). A fact is "material" if under the substantive law it could have an effect on the outcome of the lawsuit. *Equal Emp't Opportunity Comm'n v. Horizon/CMS Healthcare Corp*., 220 F.3d 1184, 1190 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 248 (1986)).

While the moving party bears the initial burden of showing that there is an absence of any issues of material fact, *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991), the movant need not negate the non-movant's claim. *See John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994); *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994). Once the moving party points to an absence of evidence to support the non-moving party's claim, the non-moving party may not rest upon his or her pleadings, but must present specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. *See* Fed. R. Civ. P. 56(e). *See also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). If the non-moving party will bear the burden of proof at trial, it must come "forward with sufficient competent evidence to establish a *prima facie* claim." *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, – F. Supp. 3d –, No. 13-cv-03452-MSK-NYW, 2016 WL 632357, at *3 (D. Colo. Feb. 17, 2016).

The court must construe the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party. *Kidd v. Taos Ski Valley, Inc*., 88 F.3d 848, 851 (10th Cir. 1996). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Conclusory allegations will not create a genuine issue of material fact necessitating trial. *Dobson v. City & Cty. of Denver*, 81 F. Supp. 2d 1080, 1083 (D. Colo. 1999). *Cf. Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (acknowledging "conclusory allegations without specific supporting facts have no probative value"). Evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment. *Ayon v. Gourley*, 47 F. Supp. 2d 1246, 1252 (D. Colo. 1998). The demonstration of "some metaphysical doubt as to the material facts" is not sufficient to establish a genuine issue of material fact. *Foreman v. Richmond Police Dep't*, 104 F.3d 950, 957 (7th Cir. 1997). "The very purpose of a summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). In short, this court must determine whether Plaintiff has come forward with specific facts to overcome Pacific's motion in whole or in part.

Plaintiff is proceeding *pro se,* and the record does not reflect whether he is an attorney. The court understands, perhaps erroneously, that Plaintiff is a law school graduate, is licensed to practice in California, and is not licensed to practice in Colorado.[3] An unlicensed law school graduate representing themselves is treated as a *pro se* litigant, albeit not a typical one. *See, e.g., Libretti v. Courtney,* 633 F. App'x 698, 698 n.1 (10th Cir. 2016) (noting a plaintiff who is a law school graduate "is not a typical pro se litigant;" in affirming dismissal, the court does not state

---

[3] *See, e.g.,* the State Bar of California's public records at https://members.calbar.ca.gov, of which the court can take judicial notice under Federal Rule of Evidence 201.

whether such a plaintiff's pleading was entitled to a *pro se* standard of construction); *Whatcott v. City of Provo,* 231 F.R.D. 627, 630 (D. Utah 2005) (treating law school graduate as *pro se* litigant); *Soliman v. Pearson,* No. 13-cv-124-RBJ, 2013 WL 1934042, at *1 (D. Colo. May 9, 2013) (treating law school graduate as *pro se*). *Pro se* "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). "[S]uch liberal construction is intended merely to overlook technical formatting errors and other defects in Plaintiff's use of legal terminology and proper English." *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1279 (D. Colo. 2009) (citation omitted). But the court also cannot be a *pro se* litigant's advocate, and "*[p]ro se* status 'does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil … Procedure.'" *Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008).

Pacific points out that Plaintiff did not submit a declaration, affidavit or documents in support of his opposition, and argues that the court should grant summary judgment on this basis. Rule 56(c) requires "[a] party asserting that a fact … is genuinely disputed must support the assertion by: ... citing to particular parts of materials in the record, including depositions… affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). Although "[d]istrict courts must take care to insure that *pro se* litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings," *Jaxon v. Circle K Corp.,* 773 F.2d 1138, 1140 (10th Cir. 1985) (internal quotation marks omitted), *pro se* litigants are not excused from complying with civil procedure rules. *Yang,* 525 F.3d at 927 n.1. Plaintiff is also

not a typical *pro se* litigant (*Libretti,* 633 F. App'x at 698 n.1), since he has practiced law in the past.  When a *pro se* plaintiff already has experience of summary judgment procedures, the court need not give special notice.  *Calbart v. Sauer*, 504 F. App'x 778, 781–82 (10th Cir. 2012) (affirming magistrate judge decision that because all parties submitted evidence outside of the amended complaint, treating defendants' Rule 12 motion as a motion for summary judgment did not require additional notice to *pro se* plaintiff).

If Plaintiff had verified his complaint according to 28 U.S.C. § 1746, his statements therein could be "treated as an affidavit if the facts asserted are within the pleader's personal knowledge."  *Jaxon*, 773 F.2d at 1139 n.1.  *See also Allen v. Reid*, No. 07-cv-01225-WDM-MJW, 2008 WL 1925105, at *2 (D. Colo. May 1, 2008) (ordering defendant to show cause why plaintiff's verified complaint was insufficient to show a material fact dispute).  Plaintiff attempted to verify his complaint by stating "I certify that the foregoing complaint is true and correct to the best of my knowledge," and signing his name.  Doc. 7 at 3.  This certification omits the phrase "under penalty of perjury" as required in 28 U.S.C. § 1746.  Thus, Plaintiff has failed to comply with Rule 56's requirement that witnesses' fact assertions be sworn or declared in the form permitted by 28 U.S.C. § 1746.

"If a party fails to properly support an assertion of fact … the court may … consider the fact undisputed for purposes of the motion; [and] grant summary judgment if the motion and supporting materials … show that the movant is entitled to it; or … issue any other appropriate order."  Fed. R. Civ. P. 56(e)(2), (3).  Accordingly, the court has discretion to simply disregard Plaintiff's unsworn fact assertions.  In this instance, in the interest of thoroughness and treating Plaintiff as a *pro se* litigant, this court will consider Plaintiff's unsworn assertions.

## III.   Analysis

A.   Breach of Contract Claim

The Policy does not have a governing law provision.  Pacific argues that under diversity jurisdiction, the federal court applies the substantive law of the forum state.  *Blackhawk-Cent. City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000).

Plaintiff did not dispute that Colorado law governs the Policy.

> Under Colorado law, the interpretation of an insurance policy is a matter of law for the Court. …. In interpreting the terms of a contract, the agreement must be read in its entirety. … In the absence of ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms.

*Wilson*, 2015 WL 849210, at *3 (internal quotation marks omitted, citing *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003); *Copper Mountain, Inc. v. Indus. Sys., Inc.,* 208 P.3d 692, 697 (Colo. 2009); *Farmers Ins. Exch. v. Dotson,* 913 P.2d 27, 30 (Colo. 1996)).

Plaintiff asserts that Pacific breached the insurance contract in denying four aspects of his claims: the depreciation rate on the house, rents lost before the tenants reoccupied, rents lost after reoccupation, and the tenants' hotel expenses.   To meet his burden of proof for this claim, Plaintiff must prove by a preponderance of the evidence: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) a failure to perform on the part of the defendant; and (4) damages to the plaintiff resulting from defendant's failure to perform.  *See, e.g., Wilson v. Humana Health Plan, Inc.*, No. 14-cv-03259-MEH, 2015 WL 849210, at *2 (D. Colo. Feb. 25, 2015); *Sewell v. Safeco Ins. Co. of Am.*, No. 06-cv-000150-EWN-MJW, 2007 WL 2071617, at *6 (D. Colo. July 19, 2007).  The motion raises only the third element: whether Pacific breached the Policy by not paying all the amounts that Plaintiff demands.

1.      Depreciation

Plaintiff argues that Defendant breached the Policy by using an unreasonable rate of depreciation in determining actual cash value for the loss on the house, resulting in Pacific withholding $11,455.36 for depreciation on the house.  The Policy does not address the methodology or bases for determining depreciation.  In its motion papers, Pacific was not entirely clear whether it relied on Mr. Pszanka's calculation or instead on its own formula.  Doc. 20-1 SOF ¶ 9 (stating "after calculation of the depreciation based upon the age and condition of the damaged property," Pacific paid what it asserts is actual cash value, without identifying who calculated the depreciation).  Plaintiff contends that Pacific used its own depreciation formula that was not disclosed in the Policy.  Doc. 23 at 2, 5-6, 8.

In reply, Pacific clarified that it relied on Mr. Pszanka's calculation of depreciation.  Doc. 24 at 7-8; Doc. 24-1 Defendant's Reply SOF ¶ 9.  Pacific's report to Plaintiff states that "[t]his report was completed with the assistance of the appraiser who inspected the loss."  *Id.* at p. 1. Mr. Pszanka's narrative report to Pacific accompanying his estimate describes "DEPRECIATON [*sic*]: building materials factored at 75%, carpet and pad at 99% and fencing at 10%."  Doc. 24-3 at p. 2.  Pacific's report to Plaintiff consistently uses the depreciation rates that Mr. Pszanka described in his narrative report.  Doc. 24-4 at p. 13 of 24 (10% depreciation on fence materials); Doc. 24-4 at *e.g.,* p. 10 of 24 (99% depreciation on carpet and pad; 75% depreciation on other materials in house).  Pacific's report to Plaintiff further states:

> If you have any additional information not considered in this estimate, please submit such information and supporting documentation in writing. * * * Any depreciation guidelines applied to this estimate of repair is [sic] based on average quality, condition, age and useful life unless otherwise noted. Life expectancy values are intended to be averages and proper maintenance of each item is anticipated.  Refer to the Loss Settlement section of your policy or you may contact the Claims Department for further clarification.

Doc. 24-4 at p. 1.  Plaintiff does not dispute that he did not send any additional information or seek clarification of the depreciation rates until his letter to Pacific dated December 15, 2014. Doc. 23 at 9 (response to SOF ¶ 12, reflecting Plaintiff's belief that if he had disputed depreciation earlier, the dispute would have delayed repairs).  Plaintiff's argument that Pacific used its own, undisclosed formula for calculating depreciation is not supported by any evidence, and therefore fails to raise a material fact dispute.

Defendant argues that the appraisal process is the Policy's sole means of resolving the depreciation issue.  Doc. 20 at 7-8.  The Policy's appraisal process is triggered "on the written request of either party."  Doc. 20-2 at p. 8 of 19 ¶ 8.  If neither party invokes the provision, it is inoperative.  *See, e.g., Norwich Union Fire Ins. Soc. v. Rayor*, 201 P. 50, 50–51 (1921) (cited with approval in *Wagner v. Phoenix Ins. Co.*, 348 P.2d 150, 152 (1960)).  Based on the current record, neither party invoked the appraisal process, and it is therefore inoperative here.

Defendant next argues that the depreciation rate is a matter for expert opinion and because Plaintiff has no expert witness, he cannot meet his burden of proof.  Plaintiff argues that this is an issue for the jury, based on Plaintiff's opinion that Pacific should have used Mr. Pszanka's purported 2% depreciation rate on the fence.  Doc. 23 at 9, response to SOF ¶ 13.[4] The depreciation rate is an issue requiring expert opinion testimony.

> Unlike taking an average, calculating depreciation requires more than applying basic mathematics.  Technical judgment is required in choosing among different types of depreciation [such as] … straight-line and progressive depreciation; [and] … whether the term depreciation implies only physical depreciation or includes a broader concept including obsolescence and economic and functional depreciation.

---

[4] Mr. Pszanka's rate of depreciation on the fence materials was 10%.  Doc. 24-3; Doc. 24-4 at p. 13 of 24.  Plaintiff appears to consider the fence depreciation as a percentage of the combined materials and labor.  *Id.*

*James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207, 1214-15 (10th Cir. 2011) (quotation marks omitted; citing *E.I. DuPont de Nemours & Co., Inc. v. Robin Hood Shifting & Fleeting Serv., Inc.,* 899 F.2d 377, 381–82 (5th Cir. 1990); *Dickler v. CIGNA Prop. and Cas. Co.,* 957 F.2d 1088, 1099 (3d Cir. 1992)).

Plaintiff in fact relies on Defendant's expert for Plaintiff's proposed depreciation rate: the rate that Plaintiff believes Mr. Pszanka applied to the fence, albeit erroneously describing it as 2% instead of 10%. This adds further weight to the expert nature of this issue. *James River*, 658 F.3d at 1215 (reliance on "technical report by an outside expert"). Here, the depreciation calculation may not be as complex as in *James River*, but nonetheless is technical and involves the use of professional judgment in interpreting the undefined term "depreciation" in the specific context of Plaintiff's rental property.

The deadline for affirmative expert disclosure passed on November 24, 2015. Docs. 16, 17. According to Pacific's reply, Plaintiff has not disclosed any expert witnesses. Doc. 24 at 7. Plaintiff has been aware of this procedural requirement since at least the August 28, 2015 status conference in which the court entered the scheduling order. Docs. 16, 17 at 8-9. At that time, he did not foresee retaining an expert. Doc. 17 at 8. Certainly, Plaintiff did not mention in his Opposition that he has disclosed himself or anyone else as an expert. Plaintiff's lack of an expert witness to opine regarding the appropriate calculation of depreciation on Plaintiff's house causes the depreciation part of his claim to fail on summary judgment.

Plaintiff also cannot rely on his own opinion as lay testimony. Plaintiff's opinion would necessarily be based on either his experience as the Property's owner or his experience as a rental property owner, and either would be expert opinion. *James River*, 658 F.3d at 1215 ("knowledge derived from previous professional experience falls squarely within the scope of

Rule 702 and thus by definition outside of Rule 701," internal quotation marks omitted).  "[T]he Federal Rules of Evidence generally consider landowner testimony about land value to be expert opinion.  The Rule 702 advisory committee's note states that landowners testifying to land value are 'skilled witnesses' under Rule 702." *Id.*

Moreover, if Mr. Bruce were to now seek leave to extend the deadline for disclosing an expert, Plaintiff cannot show that he is entitled to more than the amount that Pacific paid as actual cash value.  Mr. Bruce is entitled to "actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property."  Doc. 20-2 at p. 8 of 19 ¶ 5.  Plaintiff testified in his deposition that he has no records of his repair expenses.  Doc. 20-3 at 97-100.  Plaintiff argues that he was not required to document those expenses and is allowed to economize.  Doc. 23 at 9, response to SOF ¶ 14.  Plaintiff can economize, but the Policy unambiguously limits actual cash value to no greater than the actual cost required to repair the Property.  Plaintiff bears the burden of proving that Pacific breached the Policy in not paying more than $28,547.63 for the damage to the house.  *See, e.g., Wilson*, 2015 WL 849210, at *2 (breach of contract is one of the elements the plaintiff must prove against insurance company).  He cannot meet that burden if he does not have evidence to show his actual repair costs exceeded that amount.[5]

2.      Lost Rents Before the Rental Units Were Habitable

Plaintiff further claims that Pacific breached the Policy in paying lost rents for only what Pacific refers to as the "reasonable period" for repairs instead of the full time period that the repairs actually required.  Doc. 23 at 1.  This issue is governed by Coverage D of the Policy:

---

[5] The Policy also makes Plaintiff responsible to "[p]rotect the property from further damage, make reasonable and necessary repairs to protect the property, and keep and [sic] accurate record of repair expenses."  Doc. 20-2 at p. 7 of 19 ¶ 4(b).  On Pacific's reasonable request, Plaintiff was obligated to "provide us with records and documents."  *Id.* ¶ 4(d)(2).  However, because neither party discussed how these provisions could apply here, the court does not rely on them.

> If a loss covered under this policy to a tenant occupied property makes that part of the residence premises rented to others or held for rental by you unfit for its normal use, we cover its:
>
>> Fair Rental Value, meaning the fair rental value of that part of the residence premises rented to others or held for rental by you less any expenses that do not continue while that part of the residence premises rented or held for rental is not fit to live in.
>
> Payment will be for the shortest time required to repair or replace that part of the residence premises rented or held for rental.
>
> * * *
>
> We do not cover loss or expense due to cancellation of a lease or agreement.

Doc. 20-2 at p.6 of 19.

Pacific calculated fair rental value for what it describes as "the reasonable time that tenants would need to be out of their units while Mr. Bruce repaired the fire damage." Doc. 20-1 SOF ¶ 9. Pacific asserts that this was "approximately four months" from the July 7 fire. Doc. 20 at 9.[6] For that time period, Pacific paid $9,133.74 under Coverage D (Fair Rental Value). Plaintiff disputes that four months was a reasonable time period because Pacific included the 51 days that passed before Pacific paid the undisputed portion, and contends that Pacific should pay for the full time period between July 7, 2014 and the dates that the tenants reoccupied their respective rental units.

Pacific argues that this part of the claim fails because Plaintiff did not present evidence of "how long it actually took to put the apartments back into use." Doc. 24-1 SOF ¶ 9.[7] However, Pacific put forward evidence that the apartments were back in use in late November and mid-December 2014. *Id.* ¶ 17; Doc. 20-3 (Plaintiff's Deposition) at 45-46 (Unit A tenant moved back

---

[6] Complaint Ex. 1, Plaintiff's December 15, 2014 letter to Pacific, alleges that Pacific paid lost rents through November 13, 2014. Beyond that allegation, the record has no evidence regarding the precise time period for which Pacific has paid the lost rents.

[7] At least for purposes of the present motion, the parties treat the reoccupation dates as the dates that the units became fit to live in again. The court does likewise.

in two days before Thanksgiving, around Nov. 26, 2014); *Id.* at 68 (Unit B tenant moved back in December 2014).  The record thus shows that both rental units were not fit for use for more than the approximately 4 months for which Pacific has paid the Plaintiff lost rents.  Accordingly, Pacific has not "establish[ed] the absence ... of a genuine dispute" (Rule 56(c)(1)) regarding the rents lost "while that part of the residence premises rented or held for rental is not fit to live in" and "for the shortest time required to repair or replace that part of the residence premises" under Coverage D.

Defendant also appears to argue that its obligation to pay for lost rents while the units are not habitable is limited by the latter phrase, the "shortest time required to repair or replace that part of the residence premises rented or held for rental," which it interprets as the "reasonable" time required to repair or replace.  Defendant does not point to any authority for interpreting the "shortest time required to repair or replace" as anything other than the actual time period required to repair or replace.  "[C]overage provisions in an insurance contract are to be liberally construed in favor of the insured to provide the broadest possible coverage." *Dupre v. Allstate Ins. Co.,* 62 P.3d 1024, 1031 (Colo. App. 2002) (quoting *Fire Ins. Exch. v. Bentley,* 953 P.2d 1297, 1300 (Colo. App. 1998)).  "While an insurer may exclude events from coverage ..., the exclusion must be clear and specific." *Dupre,* 62 P.3d at 1031 (citing *e.g., Bohrer v. Church Mut. Ins. Co.,* 965 P.2d 1258 (Colo. 1998)).  Because Pacific has not shown that it is entitled to judgment as a matter of undisputed fact on the lost rents before the rental units were reoccupied, the court concludes that this part of the claim should survive summary judgment.

3.      Lost Rents After Reoccupation.

Plaintiff claims that he is also entitled to lost rents after the rental units became habitable, because the tenants cited the fire as their reason for not paying rent.  However, the Policy unambiguously covers lost rents only while a rental unit was being repaired back to habitability:

"while that part of the residence premises rented or held for rental is not fit to live in."  Doc. 20-2 at p. 6 of 19.  Plaintiff argues that the "loss of rents after tenants moved out the second time was directly attributable to the fire" and argues that Pacific concedes that "'implicated by the fire loss' [is] the standard of liability."  Doc. 23 at 2.  Plaintiff refers to Pacific's Statement of Fact ¶ 4, which reads:

> The policy insures for sudden and accidental direct physical loss to the property caused by fire.  *See* Exhibit A, at p. 7 of 19 (PSIC INS 22).  Coverages A, B, and D for dwelling, other structures (a fence) and lost rents were implicated by the fire loss.

Doc. 20-1 at 2.  This statement identifies the three coverage sections of the Policy that are at issue, and it specifies coverage for "sudden and accidental direct physical loss."  Nothing in the cited coverages (or the entire Policy) suggests that the Policy covers all losses "implicated by the fire loss."  Plaintiff's argument would make virtually all of the language defining the limits of Coverages A, B and D superfluous.  Doc. 20-2 at pp. 5-6 of 19.  The court is instead to interpret contracts "with the end in view of … giv[ing] effect to all [of a contract's] provisions so that none will be rendered meaningless."  *Fed. Deposit Ins. Corp. v. Fisher,* 292 P.3d 934, 937 (Colo. 2013) ("Each word in an instrument is to be given meaning if at all possible.").  Because the Policy unambiguously does not provide for rents lost after the rental units were habitable, the court recommends granting Pacific summary judgment on this part of the contract claim.

4.      Tenants' Hotel Expenses

Similarly, Plaintiff's contention that he is entitled to coverage for his tenants' hotel expenses fails as a matter of law.  Plaintiff points to the Policy's disclaimer of coverage for "loss or expense due to cancellation of a lease or agreement."  *Id.* Plaintiff argues that this provision required him to "try to keep the lease active so he can collect rental costs related to the fire."  Doc. 23 at 3.  Coverage D unambiguously does not require Plaintiff to maintain an active lease in

16

order to receive lost rent coverage.  It provides "fair rental value of that part of the residence …

held for rental by you."  Doc. 20-2, at p.6 of 19.  For coverage purposes, it was irrelevant

whether Plaintiff kept tenants or merely held the units for rental.

Plaintiff points to his obligations under the leases to provide rental premises, the fact that

the rental units were uninhabitable, and one of the tenants was a single mother with a child under

10 years of age.  Whatever Plaintiff's obligations may have been to his tenants, the issue here is

instead what Pacific's obligations to Plaintiff were under the Policy.  Plaintiff does not contend

that Pacific had any obligations regarding his leases.

Plaintiff also contends that the Policy's distinction between tenant-occupied premises

(Coverage D) and owner-occupied premises (Coverage E) is "arbitrary and capricious" and

involved ambiguity and "deception" because the "distinction for rental expenses was not noted in

the policy."  Doc. 23 at 7.  But the Policy makes this point clear by separating "additional living

expenses" as its own Coverage E, which is expressly limited to "an owner-occupied property."

Doc. 20-2 at p. 6 of 19.  Plaintiff does not point to any legal authority for his theory that the

"arbitrary and capricious" standard (a concept from administrative agency law) applies to the

interpretation of an unambiguous insurance provision.

In sum, the court recommends granting Defendant's summary judgment motion on

Plaintiff's first claim except for that portion of the claim addressing whether Pacific owes

additional lost rents for the actual time period that the rental units were uninhabitable.

B.       Bad Faith – Common Law and Statutory Claims.

Plaintiff brought a claim for bad faith under the statute (C.R.S. §§ 10-3-1115, 10-3-1116),

and construing the Complaint liberally also under the common law.  Doc. 7 at p. 2, third and

fourth paragraphs.  "[T]ort liability for insurance bad faith derives from the 'special nature of the

insurance contract and the relationship which exists between the insurer and the insured.'"  *Am.*

*Guar. & Liab. Ins. Co. v. King*, 97 P.3d 161, 169 (Colo. App. 2003) (quoting *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984)).  "All aspects of payment, including the adjustment of a claim, that is the [determination] of the amount that an insurer will pay an insured to cover a loss . . . fall within an insurer's good faith duty to its insured."  *Dunn v. Am. Family Ins.*, 251 P.3d 1232, 1235 (Colo. App. 2010) (quotation marks omitted).  *See also Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 970 (Colo. App. 2011) (bad faith claim regards "the entire course of the insurer's conduct until the time of trial.").

> In Colorado, the statutory and common law bad faith claims relating to insurance are similar.  By statute, "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."  Colo. Rev. Stat. § 10–3–1115(1)(a).  An insurer's delay or denial is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."  Colo. Rev. Stat. § 10–3–1115(2).  Similarly, to support a common law bad faith claim, a claimant must show that an insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable or recklessly disregards the fact that the conduct is unreasonable.  … The legal standard between the two is slightly different: In the statutory claim, the only element at issue is whether the insurer denied benefits without a reasonable basis; whereas, a common law claim must show both unreasonableness and that the insurer knew that its conduct was unreasonable or recklessly disregarded that fact.

*Wagner v. Am. Family Mut. Ins. Co.,* 569 F. App'x 574, 579-80 (10th Cir. 2014) (quotation marks omitted, citing *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1275 (Colo. 1985); *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012)).  *See also Kisselman*, 292 P.3d at 973-74 (noting from a review of the legislative history that "the purpose of the [statute] was to announce a standard of conduct in the first-party context in addition to and less onerous than the common law standard of good faith and fair dealing").

Thus, for both the common law and statutory bad faith claims, where an insured sues his or her insurance company directly on a claim of bad faith, the plaintiff must prove that the

insurance company's conduct was objectively unreasonable.[8]  "Whether an insurer has acted

reasonably in denying or delaying approval of a claim will be determined on an objective basis,

requiring proof of the standards of conduct in the industry."  *Savio*, 706 P.2d at 1274 (noting that

in a first-party direct coverage case, "[t]he insurer . . . must be accorded wide latitude in its

ability to investigate claims and to resist false or unfounded efforts to obtain funds not available

under the contract of insurance.").

For the common law claim, the insured must also prove a subjective element; *i.e.,* that the

insurance company either knew its conduct was unreasonable or acted in reckless disregard[9] of

whether that conduct was unreasonable.  *See, e.g., Zolman v. Pinnacol Assurance*, 261 P.3d 490,

496-97 (Colo. App. 2011); *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 469 (Colo.

2003).  "This standard of care reflects a reasonable balance between the right of an insurance

carrier to reject a non-compensable claim submitted by its insured and the obligation of such

carrier to investigate and ultimately approve a valid claim."  *Goodson v. Am. Std. Ins. Co. of

Wis.*, 89 P.3d 409, 415 (Colo. 2004) (internal citations and quotation marks omitted).

In his Opposition, Plaintiff argues that Pacific acted in bad faith in several aspects of its

conduct regarding his claims: (1) using an unreasonably high depreciation rate on the house and

not agreeing to Plaintiff's later demand to use 2% instead; (2) arguing in its motion for summary

judgment that "no other depreciation rate has been provided" besides Mr. Pszanka's; (3) writing

an actual cash value policy that, given the depreciation rate that Pacific used, over insured the

---

[8] "'Unreasonable conduct' means the failure to do an act that a reasonably careful insurance company would do, or the doing of an act that a reasonably careful insurance company would not do, under the same or similar circumstances, to protect the persons insured from [damages or losses]."  CJI-Civ. 25:3 (2016).

[9] "An insurance company recklessly disregards the unreasonableness of its [conduct] [position] when it [acts] [takes a position] with knowledge of facts that indicate that its [conduct] [position] lacks a reasonable basis or when it is deliberately indifferent to information concerning the claim."  CJI-Civ. 25:7 (2016).

Property; (4) denying Plaintiff's claim for the tenants' hotel expenses and relatedly suggesting that Plaintiff could tell the tenants to sleep in a park, with relatives, or to pay for hotels themselves; (5) denying his claim for rents lost after reoccupation; (6) denying his claim for the remainder of rents lost before reoccupation; (7) taking 51 days to pay the undisputed amounts on his "simple fire claim;" and (8) taking 51 days to pay the undisputed amounts because Pacific prioritized later-filed California claims ahead of Plaintiff's claim.  Doc. 23 at 7-8.  For convenience, the court refers to these as Theories (1) through (8).[10]

Although "what constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury," that issue can be decided by the court as a matter of law where there are no genuine issues of material facts under the circumstances of a particular case.  *See Zolman*, 216 P.3d at 497.  In this case, Plaintiff cannot show a material fact dispute for several of his theories of bad faith.  As to Theories (1) and (2), for the same reasons that Plaintiff cannot show Pacific breached the Policy with respect to the depreciation rate, Plaintiff also cannot show that Pacific acted unreasonably in using Mr. Pszanka's depreciation rate and declining Plaintiff's proposal.  *See also Green Earth*, 2016 WL 632357, at *11 (after noting that the party asserting a bad faith claim has the "burden of demonstrating the unreasonableness of the insurer's action," held that a "mere disagreement between parties as to the valuation of a claim" does not create a triable bad faith claim).

As to Theory (3), Plaintiff does not point to any support – legal or factual – that Pacific had a duty to ensure that Plaintiff did not overinsure the Property.  This argument is too conclusory for the court to consider.  *Cf., Yang*, 525 F.3d at 927 n. 1 (court cannot act as advocate for *pro se* party).

---

[10] Pacific's reply does not question whether any of these theories are outside the Complaint.  The court will accordingly address each of these theories.

For Theories (4) and (5), Plaintiff does not raise a material fact dispute because the Policy unambiguously does not cover tenants' additional living expenses, or Plaintiff's lost rents after reoccupation of the rental units. Insurers have a right to timely deny non-compensable claims. *See, e.g., Goodson*, 89 P.3d at 415. Plaintiff does not argue that Pacific was untimely in denying these non-compensable claims.

On Theories (6), (7) and (8), Pacific has not shown an absence of genuine dispute regarding whether Pacific acted unreasonably in denying the claim for the remaining rents lost before reoccupation and in taking 51 days to process Plaintiff's original claim. Pacific argues that Plaintiff cannot prove unreasonableness without an expert witness regarding insurance practices, and therefore cannot rely on either his own opinions or the producing agent's expected testimony at trial. However, "expert testimony is not required where the defendant's standard of care does not require specialized or technical knowledge. Nor is expert testimony required to establish the standard of care when a legislative enactment or administrative rule establishes the standard of care." *Am. Family Mut. Ins. Co. v. Allen,* 102 P.3d 333, 343 (Colo. 2004) (note omitted, collecting cases). "If the industry standard at issue is one that is within the common knowledge and experience of ordinary people, expert testimony is not required to establish those standards." CJI-Civ. 25:3, Source and Authority n. 2 (2016) (citing *Allen*). "Whether the standard of care is within common knowledge and experience is 'committed to the sound discretion of the trial court.'" *Windsor Court, LLC v. Am. Family Mut. Ins. Co.*, No. 11-cv-01904-CMA-KLM, 2013 WL 799589, at *4 n.3 (D. Colo. Mar. 5, 2013) (citing *Allen*, 102 P.3d at 344). The Colorado Supreme Court has

> concluded that expert testimony was not required because: investigation of such a claim does not present a technical question; determining what constitutes a reasonable explanation for denying a claim does not require special knowledge or

training; and the insured is not required to have a particular ability to understand why coverage is denied.

*Windsor Court,* 2013 WL 799589, at *4 (internal quotation marks omitted, quoting *Allen*).

Here, Plaintiff does not need an expert witness to establish the standard of care for handling the rents lost before reoccupation, or the time taken to process the original claim. These are both matters that are not technical, do not require special knowledge or training, and do not require a particular ability to understand Pacific's decisions. Pacific does not cite any cases finding either issue is outside of common experience. Without knowing exactly what the witnesses will say at trial, the court is unwilling to exclude the possibility that either Plaintiff or Mr. Brumfiel could give appropriate lay testimony in light of their respective personal knowledge.

For the common law bad faith claim, however, this does not end the analysis. For that claim, Plaintiff also must come forward with evidence that Pacific knew (or was reckless) that it had no reasonable basis for its actions in Theories (6) through (8). The court addresses these out of sequence, as follows. For Theory (7), Plaintiff's argument that this was just a "simple fire claim" is a self-serving and conclusory assertion that is insufficient to support the subjective element. *See, e.g., Thomas v. U.S. Bureau of Prisons*, 282 F. App'x 701, 704 (10th Cir. 2008) (holding that "conclusory and self-serving statements, even if presented in an affidavit, are insufficient to create a genuine issue of fact to survive summary judgment.").

For Theory (8), Plaintiff's theory that Pacific took 51 days because it gave higher priority to processing later fire claims in its home state of California is sufficient, if barely, for the subjective element to survive summary judgment. Plaintiff claims that an employee of Pacific told Mr. Brumfiel that the reason for delay was that Pacific was processing later-filed California claims ahead of Plaintiff. Pacific argues this is inadmissible as hearsay (statement of Pacific's

employee to producer) within hearsay (producer to Plaintiff) and offered for the truth of the

matter asserted.  However, Pacific does not address Federal Rule of Evidence 801(d)(2)(D),

which exempts statements of the opposing party's agent or employee within the scope of that

relationship, nor Rule 801(d)(2)(C), which exempts statements of a "person whom the party

authorized to make a statement on the subject."  The record to date does not clarify whether Mr.

Brumfiel was acting as an agent of Pacific in communicating Defendant's explanation to

Plaintiff.  If Mr. Brumfiel was not acting as Pacific's agent in that role, Pacific had a duty to

timely communicate directly with Plaintiff regarding the processing of his claim.  *Dunn*, 251

P.3d at 1237.  On this record, the court declines to rule out testimony on this issue.

Pacific also argues that the timing of its payment of the undisputed amounts complied

with the Policy's 60 day time period (Doc. 20-2 at p. 8 of 19),[11] and that this time period is

consistent with a Colorado insurance regulation, Colo. Div. of Ins. Reg. 702-5:5-1-14.  These

facts are relevant to whether it acted unreasonably, but they do not show that Defendant acted

reasonably as a matter of law.  "[T]he regulation and its authorizing statute … have no

application to the civil action established by section 10–3–1115."  *Fisher v. State Farm Mut.*

*Auto. Ins. Co.,* -- P.3d—, 2015 WL 2198515, at *6, 2015 COA 57 (Colo. App. 2015), *petition for*

*cert. granted,* No. 15SC472, 2016 WL 3207869 (Colo. June 6, 2016).  "Colorado recognizes the

viability of a claim of bad faith even if the express terms of the contract have been honored by

the insurer."  *Dunn,* 251 P.3d at 1235.  *Cf. Peden v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-

00982-LTB-KLM, 2014 WL 4696401, at *2 (D. Colo. Sept. 22, 2014) (noting that "the fact that

the benefits owed to Plaintiff is [sic] currently in dispute does not mean that Plaintiff's statutory

bad faith claim fails as a matter of law"); *Sipes v. Allstate Indem. Co.*, 949 F. Supp. 2d 1079,

---

[11] "Loss Payment. We will adjust all losses with you. . . . Loss will be payable 60 days after we
receive your proof of loss and: a. reach an agreement with you; b. there is an entry of final
judgment; or c. there is a filing of an appraisal award with us."  Doc. 20-2 at p. 8 of 19.

1085 (D. Colo. 2013) (recognizing that denial of a "fairly debatable" claim does "not alone establish that the defendant's actions were reasonable as a matter of law" in the context of a claim under C.R.S § 10-3-1115).

As to Theory (6), the denial of his claim for remaining rents lost before reoccupation, Mr. Bruce argues in pertinent part that "Plaintiff spoke to and wrote Pacific's employees to object to the claim.  It was not paid in full, which is why suit was filed.  Plaintiff told Pacific why its denial of payment was unreasonable." Doc. 23 at 8.[12]  This is a conclusory, self-serving statement that is insufficient to show a material fact dispute.  However, Plaintiff also argues that Defendant refused this part of his claim because Pacific "[i]nclud[ed] in their estimate of housing delay that plaintiff will repair the building before he receives the money (by advancing their estimated $43,503 [sic] in repairs from his own pocket)." Doc. 23 at 8.  This theory rests upon (a) the same contention that 51 days was an unreasonable delay for paying the undisputed portion, and (b) Pacific's decision, after Plaintiff informed it that the repairs had taken longer than Pacific had paid for lost rents, to not pay the remainder.  This suffices, if barely, to show a material fact dispute of whether Pacific knew or recklessly disregarded that it was acting unreasonably in denying the remainder of rents lost before reoccupation.

In short, material fact disputes preclude summary judgment on the common law and statutory bad faith claims to the extent they are based on the denial of remaining rents lost before reoccupation and delay in paying the undisputed portion of the original claim.

---

[12]  Plaintiff further argues that "Pacific goes on to admit plaintiff does not have to prove actual corporate knowledge that its actions were 'unreasonable.'  That is a jury question, another reason to deny its MSJ." Doc. 23 at 8.  Plaintiff confuses his statutory bad faith claim (for which he need not prove the subjective element) with his common law claim, for which he had to bring forward some evidence of knowledge or reckless disregard to reach the jury.

## IV.     Conclusion

Based on the foregoing analysis, this court RECOMMENDS granting partial summary judgment in favor of Pacific on: (a) Plaintiff's breach of contract claim, except for the claim for remaining rents lost before reoccupation; (b) Plaintiff's common law and statutory bad faith claims to the extent they are based on (i) the depreciation rate, (ii) denial of coverage for lost rents after reoccupation, (iii) denial of coverage for the tenants' hotel expenses, (iv) the Policy's distinction between owner-occupied premises and rental properties, and (v) the Policy overinsuring the Property.  This court RECOMMENDS denying Defendant's motion as to the breach of contract claim for additional lost rents before reoccupation, and the bad faith claims to the extent they are based on the denial of the additional lost rents before reoccupation, and the delay in paying the undisputed portion of Plaintiff's original claim.

Plaintiff indicated in his most recent filing (Doc. 29) that he has been incarcerated since March 2016, with the potential for parole to begin as early as September 7, 2016.   Given this timing and Plaintiff's request to stay the case until he is paroled (Doc. 29), this court FURTHER RECOMMENDS extending the parties' time for objections to this Recommendation to 14 days after Plaintiff is released.

## Advisement to the Parties

Within fourteen days (unless extended by the court as recommended above) after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely

and specific to preserve an issue for de novo review by the district court or for appellate review."

*United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Okla.*, 73

F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by

the District Judge of the Magistrate Judge's proposed findings and recommendations and will

result in a waiver of the right to appeal from a judgment of the district court based on the

proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d

573, 579-80 (10th Cir. 1999) (district court's decision to review a Magistrate Judge's

recommendation *de novo* despite the lack of an objection does not preclude application of the

"firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc*., 52 F.3d 901,

904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order,

cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*,

980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their

right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d

1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

review).

DATED this 15th day of August, 2016.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge